**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ATHENA ANN SHEPPARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-16-517-SPS** |
| | ) | |
| **COMMISSIONER of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Athena Ann Sheppard requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born December 28, 1956, and was fifty-nine years old at the time of the administrative hearing (Tr. 54-55). She completed high school and three years of college, and has worked as a customer service representative, office manager, receptionist, and title examiner (Tr. 33, 203). The claimant alleges she has been unable to work since April 15, 2013, due to vertigo, carpal tunnel in both hands, bulging discs at L2-3 and L4-5, and arthritis in her hands (Tr. 202).

**Procedural History**

On November 6, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Truett M. Honeycutt, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 24, 2016 (Tr. 21-34). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, she could lift/carry ten pounds occasionally and less than ten pounds frequently, stand/walk for thirty minutes continuously and for a total of two hours in an eight-hour workday, and sit for one hour continuously and for a total of

six hours in an eight-hour workday, and she could push/pull with bilateral lower extremities occasionally. Furthermore, he found that she could never climb ladders/ropes/scaffolds or have exposure to hazardous moving machinery and moderate vibration; that she could only occasionally balance, crawl, stoop, bend, squat, kneel, and crouch; and that she could handle and finger on a frequent, but not continuous, basis. Finally, he found that she could interact with co-workers on an occasional basis only, and that she could perform simple and detailed work, but not complex (Tr. 28). The ALJ thus concluded that the claimant could return to her past relevant work as a customer service representative and a receptionist (Tr. 33).

## Review

The claimant contends that the ALJ erred by: (i) improperly determining that she could return to her past relevant work as a customer service representative and receptionist, and (ii) failing to properly assess the opinion of her treating neurologist, Dr. Jerome Lopez. The Court agrees that the ALJ failed to properly assess the claimant's RFC at step four, and the decision of the Commissioner is therefore reversed.

The ALJ determined that the claimant had the severe impairments of peripheral neuropathy of the lower extremities, bilateral carpal tunnel syndrome post release, obesity, lumbar disc disease with stenosis, depression, and anxiety (Tr. 23). Treatment notes from Dr. Lopez indicate that he assessed her with carpal tunnel syndrome, dizziness and giddiness, degeneration of lumbar or lumbosacral intervertebral disc, migraines, mood disorder, anxiety, hypertension, meralgia paresthetica, memory loss, hypothyroidism, and occlusion and stenosis of carotid artery without mention of cerebral infarction (Tr., *e. g.*,

368, 398).  Dr. Lopez's notes further indicate that the claimant declined a referral to psychiatry, that she was sent for EMG testing of the lower limbs, that she was scheduled for carpal tunnel surgery, and that she had MRIs of the lumbar and cervical spines and the brain.  The February 2014 MRI of the lumbar spine revealed mild central canal narrowing at L3-4, moderate right and mild left foraminal narrowing at L4-5, and bilateral moderate foraminal narrowing L5-S1 (Tr. 458).  A bilateral carotid duplex ultrasound revealed left carotid bulb and proximal internal carotid artery 25-35% stenosis (Tr. 459).  The MRI of the brain was unremarkable, although it showed bilateral nasal moderate congestion (Tr. 461).  A September 2014 MRI of the cervical spine revealed multilevel degenerative changes of the cervical spine and upper thoracic spine, most notable at the C3-C4, C5-C6, and C6-C7 levels (Tr. 562).

Dr. Lopez's treatment notes in Spring 2014 repeatedly state that he believed she was disabled from her dizziness (Tr. 429, 433, 436, 439).  Beginning in May 2014, Dr. Lopez's treatment notes indicated a belief that she was disabled due to multiple neurological problems (Tr. 517, 525, 529, 535, 539, 544, 616, 628, 635, 639, 745).  Notes under the heading of "Preventive Medicine" indicate he placed the claimant under neck and back precautions; advised no heavy lifting, excessive bending, or spine manipulation; and stated that the claimant does not drive (Tr. 525, 529, 535, 539, 544, 616, 628, 635, 639).  The claimant did undergo bilateral carpal tunnel release procedures, with good results (Tr. 468, 473-476).  However, notes from Dr. Lopez indicate that on January 16, 2016, the claimant was using bilateral carpal tunnel wrist splints (Tr. 745).

On March 26, 2014, Dr. Lopez completed a physical capacities evaluation, in which he assessed her with dizziness, idiopathic progressive polyneuropathy, and carpal tunnel syndrome, then stated that he felt she was disabled due to the dizziness (Tr. 421). He indicated that the claimant could sit, stand, and walk one hour each in an eight-hour workday; that she could frequently reach above shoulder level, occasionally bend, and never squat, crawl, or climb; that she had a total restriction from unprotected heights, and a mild restriction in exposure to marked changes in temperature and humidity; and that she would need to take unscheduled breaks during the day (Tr. 421-422, 462-465).

On June 25, 2014, Dr. Lopez completed a mental RFC questionnaire, in which he indicated that the claimant had been diagnosed with memory loss and a mood disorder, characterized by difficulty with concentration, depression, anxiety, and memory loss, and resulting in functional limitations of concentration and remembering (Tr. 493).

On July 25, 2014, Jeri Warren, Ph.D., conducted a mental status psychological examination of the claimant (Tr. 496). Dr. Warren reported the claimant's statements that she had difficulty concentrating, which were also echoed by her husband who accompanied her to the appointment, and stated that the claimant had been able to repeat back a sequence of five numbers forwards and three numbers backwards, but that she could not and did not completed arithmetic calculations although she was able to complete a serial three task involving serial subtraction (Tr. 499). Dr. Warren provided no diagnosis, and stated that the claimant was not currently experiencing any mood or behavioral disturbances (Tr. 499).

In September 2015, Dr. Avinash Ramchandani treated the claimant and assessed her with lumbar spinal stenosis and lumbar radicular pain, and ordered an epidural steroid

injection (Tr. 605). He ordered an MRI of the lumbar spine which revealed: (i) at L3-4, persistent mild central canal stenosis and persistent moderate-to-severe left neural foraminal stenosis due to 5 mm subarticular to left foraminal disc herniation; (ii) at L4-5, mild-to-moderate central canal stenosis and moderate-to-severe right foraminal stenosis secondary to 8 mm right foraminal disc herniation, as well as mild-to-moderate left foraminal stenosis; and (iii) at L5-S1, mild central canal stenosis and severe left foraminal stenosis, indicating that the foraminal stenosis had increased significantly since a prior exam due to significant narrowing of the disc space (Tr. 607-608). The claimant reported an inability to go to physical therapy due to the cost (Tr. 616). Dr. Lopez also saw the claimant after Dr. Ramchandani did, noting she was a candidate for injections, but had also been having some memory problems (Tr. 615). On January 19, 2016, Dr. Lopez noted that the claimant still had low back pain, including pain washing her hair, with bending over, and with sitting, and that she was still having memory problems (Tr. 744).

On February 1, 2016, Dr. Lopez completed a mental health questionnaire, in which he indicated that the claimant had anxiety and depression (Tr. 753). He characterized it as a generalized persistent anxiety, and noted other symptoms included some memory loss, and that he reached the conclusion of depression and anxiety based on his examinations (Tr. 754). He indicated that the claimant had moderate limitations in the three areas of functional limitation, as well as moderate limitation with episodes of decompensation, further indicated that the claimant's psychiatric condition would affect her experience of pain and other physical symptoms, and also checked a box indicating that she would be absent from work more than four days per month (Tr. 755).

That same day, he completed a form regarding the claimant's physical ability to do work-related activities (Tr. 757). He indicated that the claimant could lift less than ten pounds occasionally and ten pounds frequently, that she could sit thirty minutes at a time for a total of less than two hours in an eight-hour workday, that she could stand/walk zero minutes at a time for a total of less than two hours in an eight-hour workday, and that she would need to shift position at will and also lie down at unpredictable intervals (Tr. 757). In support, he cited the claimant's dizziness, back pain, wrist and hand pain, numbness, and tingling (Tr. 757). Additionally, he indicated that the claimant could occasionally climb stairs, but never twist, stoop (bend), crouch, or climb ladders, citing to the most recent MRI of her lumbar spine (Tr. 758). Again, he reiterated that she had memory loss, as well as limitations related to kneeling and crawling (Tr. 758). He checked a box indicating that her symptoms interfered constantly, and, again, that she would be absent more than four days per month (Tr. 758). On February 8, 2016, Dr. Lopez wrote on a prescription sheet, "I do not feel that [claimant] can stand, sit or walk for an extended period of time without having to adjust her position due to her pain. I do not feel that she can work due to these limitations" (Tr. 760).

There is no physical consultative examining opinion in the record. State reviewing physicians found that the claimant could perform a limited range of sedentary work (Tr. 108-109, 124-125). At the administrative hearing, the ALJ called on two additional state reviewing physicians, who each testified as to their opinions following a review of the claimant's record. As to her physical impairments, Dr. Murphy testified that Dr. Lopez's assessment was not reasonable because in her opinion there was not objective

-8-

evidence of impairments to this degree, and he did not include her peripheral neuropathy, which Dr. Murphy categorized as her "primary impairment" (Tr. 73). She stated that the claimant's pain could possibly include more limitations, but stated there was "almost nothing" to support the sit/stand/walk limitations he found (Tr. 74). Furthermore, she testified that follow-up after the claimant's bilateral carpal tunnel release showed improvement and reduction in symptoms (Tr. 74). She then opined that the claimant could lift/carry ten pounds occasionally and less than ten pounds frequently, sit/stand for thirty minutes continuously and two hours total in an eight-hour workday, sit at one- to two-hour intervals for up to six hours per day, push/pull occasionally with the lower extremities, and that she could not climb ladders/ropes/scaffolds, and could only occasionally engage in postural activities including crawling (Tr. 77-78). Additionally, Dr. Murphy limited the claimant to frequent, but not constant bilateral handling and fingering, and stated that she should avoid hazardous moving machinery and even moderate vibration (Tr. 79).

At the same hearing, Dr. Bentham testified as to the claimant's mental impairments. He stated that the claimant did not have a severe mental impairment, but that she had the nonsevere mental impairment of major depression and generalized persistent anxiety (Tr. 83-84). He opined that the claimant had mild impairment in activities of daily living and concentration, persistence, and pace, but moderate impairment with social functioning, and no episodes of decompensation (Tr. 84). The ALJ then noted that the moderate impairment actually raised the impairment to severe, and asked Dr. Bentham to provide a mental RFC assessment (Tr. 84-85). He then testified that the claimant could carry out simple and detailed but not complex instructions; that she was limited to occasional

interacting with co-workers, but not supervisors or the general public; and that she could handle work stress but would not be an effective team player (Tr. 85-87).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony and some of the evidence in the medical record. As to Dr. Lopez, the ALJ did not discuss much of his treatment record, but faithfully recited each of his opinions found in the record. As he did, he challenged each of Dr. Lopez's assessments with Dr. Murphy's and Dr. Bentham's opinions. In particular, he pointed out the following regarding the claimant's physical limitations: (i) Dr. Murphy opined that the claimant's peripheral neuropathy of the feet was her most limiting impairment, and faulted Dr. Lopez for not mentioning it; (ii) Dr. Murphy testified that there was no objective evidence to corroborate Dr. Lopez's limitations assigned to the claimant; (iii) Dr. Murphy disagreed with Dr. Lopez's conclusions regarding the claimant's sit/stand/walk limitations; (iv) Dr. Lopez did not mention the claimant's carpal tunnel release and Dr. Murphy noted improvement after the surgeries; (v) there was no medical explanation for the claimant's dizziness; (vi) the EMG testing did not support severe limitations in handling and fingering; and (vii) Dr. Murphy did not believe the claimant's back problems would further reduce her RFC. He therefore gave Dr. Murphy's testimony substantial weight and adopted that as the claimant's RFC regarding her physical limitations (Tr. 29-30).

As to her mental impairments, the ALJ adopted Dr. Bentham's assessment in whole, finding that he testified credibly and was convincing (Tr. 31). He assigned Dr. Warren's consultative opinion substantial weight because she is neutral and, in his opinion, performed a thorough examination (Tr. 31). Returning to Dr. Lopez's opinions, the ALJ also found that Dr. Lopez's opinion that the claimant cannot work "is not a medical opinion, but a legal opinion" and "solely within" the ALJ's purview (Tr. 32). Although

Dr. Lopez repeatedly cited the claimant's MRI and other exam findings, the ALJ found that this opinion "appears to be based on the claimant's subjective complaints and the claimant's dizziness has not been corroborated by objective medical evidence" and gave it no weight (Tr. 32). The ALJ made no mention of the notations in the record regarding the claimant's disability due to neurological factors, nor to the repeated limitations he placed on her. He then found the claimant not credible, and ultimately determined that she was not disabled (Tr. 31-33).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it. It appears that the ALJ took great pains to discredit any evidence that conflicted with the state reviewing physician opinions. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927].")," *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). As such, this was an improper assessment where the ALJ completely discounted the repeated notations in the record regarding the claimant's documented worsening back impairments, pain with range of motion, continued back pain, memory loss, and problems concentrating, as well as the repeated notations regarding physical limitations that Dr. Lopez placed on her. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991).

Additionally, although the ALJ was clearly not required to give controlling weight to any opinion by Dr. Lopez to the effect that the claimant was unable to work, *see* 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled."), he nevertheless should have determined the proper weight to give such an opinion rather than rejecting it outright. An opinion on an issue reserved to the Commissioner is not entitled to special significance, 20 C.F.R. § 416.927(e), but the ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002), *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3. The ALJ's finding that the opinions were inconsistent with medical evidence and treating notes might have justified the refusal to accord controlling weight if the ALJ had not misstated evidence, but the ALJ would have nevertheless been required to determine the proper weight to give those opinions by applying the *Watkins* factors. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927].") , *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ failed to perform any of this analysis.

Because the ALJ engaged in improper picking and choosing to discredit evidence that was inconsistent with his RFC determination, the Court cannot find that he performed the proper analysis. *See, e. g., Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a

position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hamby*, 260 Fed. Appx. at 112 (noting that when determining a claimant's RFC, the ALJ "must 'consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less' and a failure to do so 'is reversible error.'") [unpublished opinion], *quoting Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Accordingly, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**